Good morning and welcome to the Ninth Circuit. We have submitted several cases already. They are Patel v. City of Los Angeles, Berry v. City of Los Angeles, Verge v. City of Los Angeles, Echevarrera, Nehera v. Blanche, and Hagiatapur v. Blanche. The first case for argument today is Vella v. MacD Helicopters. Whenever counsel's ready. And just please watch the clock for rebuttal time. Yes, your honor. Good morning. May it please the court. Crawford Appleby appearing on behalf of all plaintiffs appellants. I would like to reserve five minutes for rebuttal. The question for this court is whether general aviation aircraft includes government aircraft such as military and police aircraft. The straightforward textual answer to this question is no, because the phrase general aviation has always been understood to refer to a subset of private aviation, basically small planes flown for recreation, private transport, flight schools, and similar. At a minimum, nobody has ever thought that general aviation includes Black Hawk helicopters flown by military in combat, even though those aircraft have type certificates, have fewer than 20 seats, and aren't used for passenger carrying operations. That is how we know that Appellee's interpretation of GAR is wrong. If they were right, then a myriad of military aircraft would qualify as general aviation aircraft, which is an absurd result that would baffle anyone who knows anything about aviation. The other side's best answer is that if you read GAR's definition of general aviation aircraft in isolation, you can interpret it the way they want. But there are two main problems with this. First, even when Congress includes a broadly worded definition, courts don't ignore the plain meaning of the word or phrase being defined. That is why, for example, the Supreme Court held that the phrase crime of violence doesn't include DUI offenses, even though you could read the definition to cover them in the Leo Cal case 543 U.S. 382. It's also why the court held that a fish is not a tangible object for purposes of Sarbanes-Oxley when they understood, excuse me, even though a fish is obviously a tangible thing, Yates 574 U.S. 537. In this case, the best example of this is, of course, the Congressional Committee that made up made up of aviation's best and brightest who invented GAR when they understood general aviation to mean personal and short-range business flying and as aircraft, quote, used other than by the military, the airlines, and the government. Even Amicus General Aviation Manufacturers Association defines the term general aviation in a similar fashion. The second problem is that we don't read statutory phrases in isolation. GARA is not an island. Instead, we consider how GARA fits into the entire statutory scheme. As this court said in the wing case 682 F3D 867, GARA appears in Title 49 and the certification requirements therein do not apply to public aircraft at all. Indeed, the statutory definitions at Section 40102 make it clear that civil aircraft and public aircraft do not overlap. I mean, we do we do look at the entire structure of the statute and provisions. On the other hand, here in GARA for general aviation aircraft, I mean, there is a specific definition with certain elements. When we have something that precise set by Congress to import something else, I think you have a harder hill to climb there. So we are not asking the court to import anything because when GARA was enacted, it was added to Title 49 and Title 49 had already been in existence for decades. And the way Congress drafted that and set up that framework, they drew this hard line between public and civil aircraft within there. And if you look at Section 40102, it couldn't be more mutually exclusive. The definition of civil aircraft is literally any aircraft, but a public aircraft. And then the definition of public aircraft includes the helicopter in this case, as well as military and other government owned aircraft. And at the very top of Section 40102, it says these definitions apply in this part, meaning the entirety of Part A of Title 49. And that includes GARA. So we have to look at GARA within the entire context of Title 49. And in fact, when you look at the remainder of what's going on in Title 49, you can see that it's solely focused on, with respect to aviation safety and manufacturing, civil aircraft. When you look at the statutes that dictate certification with the FAA, they only use the phrase civil aircraft to describe that because it's only legally required for those types of aircraft, but not for public. Well, in part, it's because the FAA Act was really about civilian aircrafts, passenger planes, et cetera, that civilians use. They weren't going to regulate, as you say, Blackhawk helicopters, F-35s, things like that. So in that sense, it made sense for the statute to say, look, we're not regulating what the military uses. We're regulating what civilians use. So it makes sense to have that. Here for GARA, it's a little bit different. It seems like, as you point out in some of the discussions by Congress, it was about protecting industries, ensure that certain type of aircrafts are still produced. And can you address more, the amicus brief says, helicopter, for example, the police use aren't, and manufacturer creates one for both civilian use as well as what police use, and it wouldn't make sense to separate them. Can you address that argument? Yes, I can, because they like to make this argument about how do we predict the future, we're the manufacturers, we need to be protected. But the problem is that if you take the public aircraft issue completely out of the equation and you just read GARA by itself, it contains plenty of exclusions that create that fluidity, because that's the nature of the aviation industry and manufacturing. For example, one of the express exclusions in GARA is passenger carrying operations. Now an aircraft could be used for that one day, and the next day it could not be. You also have the number of seats in the aircraft as being a determining factor that can change. And this is the nature of products, the manufacturer makes them and sells them, and then they lose control. And I think it's important to point out that in the Kennedy case, for example, when this court ruled on that, you had that fluidity that existed. The aircraft was delivered to the Navy at the time at which it was a public aircraft. And then later, as is often the case, it was sold as a surplus aircraft, and then it became a civil, general aviation aircraft at time. So while they argue about this fluidity being a problem for them, it also benefits them, because if that weren't the case, then Kennedy wouldn't have come out in their favor. If fluidity didn't apply, then an aircraft that was originally sold as a public aircraft also couldn't become a general aviation aircraft later and get that protection. And that's the protection that they enjoy, because many aircraft are sold to the military, the government, and then later sold to the civilian market for surplus. So I guess that was my question. Then why does it matter if this applied to the military? Because your opening statement was that that would be some absurd result. I don't know why. It would be an absurd result because it is not how the term general aviation is understood in the industry and how it's been used for decades ever since. It's just a textual argument, not a policy argument or anything like that. It's based on the text, the meaning of that word. And we have to look at that. And the one thing I also want to point out about that is that if you look at the interpretation that we are arguing for and you line it up with all the things that you can consider when doing this analysis, you look at what was the meaning of general aviation before GARB was even a thought and how is that term understood in the industry. Can I ask, if it was for military use only, would it ever get this type certificate or airworthiness certificate from the FAA? It could if it became a surplus aircraft. After the fact. Correct. So before, if it goes straight from the manufacturer to the military, it would never get that certificate? Not at that time. So then why would then at some point it has to leave the military to get that certificate? So that's what happened in the Kennedy case. Right. So then I don't understand the problem then. Right. There are times where government owners will have the aircraft certified because it's a voluntary thing that they can do. But what's important to remember about that, and the FAA has spoken directly on this in their advisory circular 9191 that we provided, it's also something that the Department of Defense said in the Jones case that we worked on when the Second Circuit asked them to weigh in, which is that the FAA doesn't have any authority over the safety of public aircraft. They have no control over it. That is entirely the responsibility of the government owner and operator. And that's something that's hard to comprehend because the FAA seems to have it all under They seem to be in charge of everything in this sphere. But the truth is, going all the way back to the earliest days of flight, and this comes from vessels and admiralty law, government aircraft and civil aircraft have always been separate because there's important reasons for that. And so if Gaara's point is to protect an industry and the 18-year cutoff, part of the compromise Congress was making was saying, well, after that point, we'll still have the FAA oversight making these airplanes safe. You don't have that policy that applies to public aircraft because it's entirely voluntary whether or not a government owner or operator can adhere to those FAA regulations and restrictions. I mean, have we applied industry custom or term of art to a term that has a specific statutory definition? I think your argument would have stronger force if the statute just said general aviation aircraft and never defined it. Then I think we look at, OK, what would it mean? Maybe we don't look at just a dictionary definition. We look at term of art, custom, et cetera. But the issue here is that the statute specifically defines it with three elements. So from a textual matter, how should we address this?  And that's why the two points that I was making about this are so important. As the Supreme Court laid out in the Leo Cowl case and the Yates case that I cited, even when the statute has an express definition, we still have to consider how to interpret that with respect to its plain meaning in order to make sense and not have an absurd result. But this isn't an absurd result here. I mean, I think, you know, maybe it's extreme and it's an extreme absurd result. But some ways you can say it actually kind of makes sense to have this distinction. It would go completely against the understanding of what general aviation means to say that a Black Hawk helicopter flying in combat is engaged in general aviation. And that's the problem with their interpretation. You take it to that realm, you know. So what do you make of the fact that GERA refers expressly and says the term aircraft has the meaning given such term in 401-02-A-6, which then is just, as far as I can tell, just the definition of basically anything that flies. And then it could have referred instead to civil aircraft, but it chose the broader definition. Yes. And because, as this court pointed out in Kennedy, the delivery of the aircraft is a much broader situation, right? They wanted to provide that protection for manufacturers. So when the aircraft is delivered, the clock starts. But then when the aircraft has an accident and causes harm, that's when we determine what the aircraft is at that point. At that point, is it a general aviation aircraft? Because this is fluid, as it was in Kennedy. It was delivered to the Navy. It was an aircraft at that time, but a public aircraft not covered by GERA. And later, when it entered the civilian space as a surplus aircraft, it then became covered by the GERA statute. And now I'd like to save my time for a bottle. Great. Thank you. May it please the court. I'm Michael Houston of Perkins Coie for the Defendants' Appeal. The straightforward statutory text resolves this case. This is a case where the court has, as I think some of Judge Lee's questions identified to my friend, an unambiguous statutory definition. And the word unambiguous matters there. It's also what distinguishes my friend's references to cases like Yates and Leocal. This court has said over and over again that where Congress chooses to define a term, it will respect that definition. And I think it's notable that the definition of general aviation aircraft that Congress created in GERA applies only, quote, for the purposes of this act. So Congress is telling you, when we use this particular term, general aviation aircraft, in this particular act, this is what we mean. They're not trading on or borrowing from a general conception of general aviation aircraft. And that's why my friend's arguments about what a general aviation aircraft is wouldn't help him, even if it were true that this aircraft is not commonly understood as a general aviation aircraft. And I want to explain in just a minute why that's not correct. I think the court's statutory interpretation precedents make clear that an unambiguous statutory definition will be respected. In Yates and Leocal, yes, there was a definition. But the holding of the Supreme Court in those cases was that there was some ambiguity in the terms of the statutory definition that called for interpretation about the meaning of tangible object, for example, in Yates. But there is no ambiguity in the terms of the statutory definition of general aviation aircraft. And my friend on the other side hasn't attempted to argue that there is. So I really think the court need go no further than that in order to affirm. I heard my friend argue that there's a hard line in Title 49 between public aircraft on the one hand and civil aircraft on the other. Well, that's true with respect to the way in which the FAA Act uses those terms. But neither of those terms appear in GARA. By contrast to, as I think Judge Sung's question pointed out, the specific places in GARA where Congress did cross-reference the FAA Act. But I think that only makes the statutory inference in our favor stronger. Congress knew that there were certain respects in which it wanted to incorporate terms that were defined by the FAA Act. But it chose not to borrow the definitions of civil aircraft or public aircraft. It didn't want to, it didn't treat the civil aircraft or public aircraft distinction as relevant at all. And that makes good sense when we remember that GARA is a statute of repose. So I also heard my friend say we have to interpret this statutory definition in light of the overall statutory scheme. Well, I think when we look at what GARA was created to do, to bolster a particular industry by establishing a statute of repose focused textually on, quote, the date of delivery, that's what puts the focus back all the way at when the aircraft leaves the manufacturer's assembly line. And at that point, who will come to own the aircraft more than 18 years later, whether this aircraft that rolls off Boeing's factory and gets delivered is going to 20 years later be owned by a police department or a private civil operator, that has nothing to do with the purposes of a statute of repose, which is focused on, again, the time of delivery and what the manufacturer was doing. But what do we, what should we do with the fact that when Congress passed GARA, it's a separate act, place it within the FAA Act. I think it's technically a note within the FAA Act. So isn't there some kind of connection between the two in terms of structure of the statute that Congress intends to say there's maybe some connection? I think Congress placed it within Title 49, Your Honor. I don't know that I think it's quite right to say it placed it within the FAA Act itself. But I think, again, there is a connection insofar as GARA explicitly borrows and incorporates certain concepts that exist in Title 49 and in the FAA Act. But that, again, all that shows is that Congress knows which parts of the FAA Act it wanted to borrow and which parts it did not. It chose to borrow terms like the definition of airworthiness certificate, but it chose not to incorporate the concept of either a public aircraft or a civil aircraft. And again, I think that makes sense because the definition of civil and public aircraft turns on who is the owner and operator of the aircraft. And that's not a question that's relevant when you're dealing with a statute of repose focusing on what did the manufacturer do at the time of delivery. I think it's worth spending just a moment talking about why this aircraft, the MD-520N helicopter at issue here, is absolutely a general aviation aircraft under any ordinary sense of the term, even if that mattered, even if the court was free to sort of set aside the statutory definition, or even if you wanted to just look for general usage to confirm that this is a general aviation aircraft. It absolutely is. And the reason for that is because there is no market for police helicopters. When Boeing manufactures this series of helicopters, it manufactures them knowing that they are to be used predominantly by civil authorities. The specific helicopter here, for example, one of its most common uses is for helicopter tours, the kind of thing you might take if you were on vacation in Hawaii. So Boeing, because it's manufacturing a model of helicopter that's going to be purchased by civilians for civilian use, it is required by federal law to go out and get a type certificate. Boeing can't opt in to type certification. And I can tell you that type certification is an extraordinarily expensive and burdensome process. No sensible manufacturer would voluntarily opt in. This is not like a mail order diploma. Getting your aircraft type certified is, again, an extremely burdensome process that you go through because federal, as a manufacturer, because federal law requires you to do that so that you can sell units of your helicopter to companies who want to use them for helicopter tours and whale watching and the like. Now, if some particular unit, so that's why this is a general aviation aircraft. That's why all the concerns that Congress had about the statute of repose are fully applicable. And the basic bargain, the basic logic of GARA was Congress's recognition that because the FAA is going to intensely regulate the design and manufacture of this category of aircraft, if there's been no accident involving a particular model more than 18 years after the aircraft was delivered, when there is subsequently an accident, it's probably not the fault of the manufacturer. It's probably attributable to either operator error or some part that got replaced along the way that the manufacturer didn't have control over. That's why GARA has a rolling limitations period for servicers and other entities that provide replacement parts. And that's, of course, just not the provision of the statute that's at issue in this appeal. But, again, I think all of that makes sense from the standpoint, judged from the standpoint of the manufacturer at the date of delivery. And then I think to just circle back, when Boeing manufactures this aircraft, knowing it's going to be sold for civilian use, required to and does go out and get a type and airworthiness certificate for the aircraft. The fact that one particular unit of that aircraft happens to be bought by the Huntington Beach Police Department and used for governmental purposes doesn't in any way undermine Congress's reason for wanting to enact the statute of repose, which was to incentivize the building of these aircraft in the first place, to motivate manufacturers not to be afraid of getting into the business of manufacturing aircraft like this. Just one quick question. When the type certificate, is that per unit or is it per model? So a type certificate, Your Honor, is issued for a model, a class of aircraft. An airworthiness certificate is used, is tied to a specific model of an aircraft. An airworthiness certificate says, we've looked at this particular unit, this specific helicopter, and we have found that it conforms to the type certificate that we, the we in this sentence is the FAA, that we the FAA have issued about what would make this aircraft safe for flight. So where you have a helicopter like this one that has both a type certificate and an airworthiness certificate from the FAA, you have a finding by the FAA, both that this model of aircraft, this type, this, you know, this class is safe for flight and that this specific aircraft is safe for flight. And military aircrafts would not get a, either a type or airworthiness certificate? Overwhelmingly, that is true, Your Honor. Military aircraft in this country are not regulated by the FAA. They are regulated by the Department of Defense. There is, of course, an entire apparatus that exists within the Defense Department under federal statute, under federal regulation, to make specifications about how military aircraft, things like Blackhawk helicopters and F-35 airplanes that really exclusively have military uses, those are regulated, but they're not regulated by the FAA. You said overwhelming. What's, what's the, what are the exceptions? I think the hedge is just for an unusual circumstance like the one that was addressed in the Jones case, Your Honor, and also the, the, the, the issue of surplus military aircraft, like the one in Kennedy. So those are the ones that after they exit military service, they get, they get them. That's precisely right, Your Honor. You know, they're no, and then at which point they're, of course, no longer a military aircraft. Now, maybe they go and become public aircraft. They get owned by some other state governmental body. Maybe they go and get owned by a civilian and deployed for a civilian purpose. But either way, GARA's, you know, GARA's point is triggered at that point when that aircraft that started as a military aircraft goes and gets a type certificate. That's the holding of this court in Kennedy. As a general matter, you're not going to find purely military aircraft being certified by the FAA, except in the very rare circumstance where Congress directed that, you know, a company manufacturing a military aircraft ought to go get a type certificate. I think those provisions exist, but they are very, very few and far between. And if the military sells the aircraft to another public entity, does it need to get that type certificate or not? Well, I'm not certain. I don't know the answer to that. I mean, I think as a general matter, probably not, Your Honor, because, of course, a public aircraft operator is not required to go out and get a type certificate. So I think, I think generally not. Maybe the military would. Maybe the new purchaser would. Maybe the purchaser wants that certificate precisely so that they have the capability to resell that aircraft to a civilian if they want to. So I don't think we can say it would happen in 100 percent of the cases, Your Honor. But if it does happen, if an owner and, you know, if, and again, I think the only reason why that question is just sort of respectfully not relevant to deciding this appeal is that what choices get made by down-the-line owners and operators of aircraft just really isn't knowable or doesn't matter to the manufacturer that's protected by the statute of repose. The reason why it could be relevant is just under, you know, your friend was arguing the plain meaning of what a, you know, a general aircraft versus a public one is. And if a public-to-public doesn't require the certificate, then it's still, that does seem to draw the line that the certificate is making it a general aviation aircraft. I think the certificate absolutely is the thing that makes it a general aviation aircraft. And the reason for that is because that's how Congress defined the term general aviation aircraft. So that is absolutely, and of course, the seats and the use. But assuming those other factors are satisfied, Congress has told us that if there's, if there's a type certificate or an airworthiness certificate that exists for this aircraft, it's a general aviation aircraft, at least for purposes of this act, this act being GARA. I just want to say a word, if I might, about the court's precedent in Kennedy, because I think it was part of the reason why the district court expressed that the case should be certified for interlocutory appeal. Kennedy, by its express terms, said what it was and was not deciding. And it specifically said this case presents concerns about the event which triggers the running of GARA's limitations period. It was, quote, undisputed that at the time of the accident in Kennedy, the helicopter there was a general aviation aircraft. So this court in Kennedy expressly did not decide the meaning of the phrase general aviation aircraft in GARA because it wasn't called upon to do so. It didn't have briefing in that question, which wasn't relevant to the timing question that was before the court in Kennedy. And under those circumstances, I think it would be, you know, I don't think that the sort of inferences from sentences that my friend is trying to rely on in Kennedy can establish some type of binding precedent that would, you know, deprive this court of the ability to simply read the statutory definition in GARA and apply it. And if I think you wanted even more confirmation that the Kennedy panel would be, you know, fully expect the court to apply the statutory definition according to its terms, I would case based on, quote, the plain language of GARA, which supported the defendant's there position. The plain language of this case, the plain language of this statute supports our position and warrants affirmance of the district court's judgment. And we'd ask the court to do that. Thank you. Thank you. I want to start out by talking about the helicopter in this case and how this statute and the way it applies is it's not just a temporal 18 years. It's the type of aircraft matters in the industry that it's in is matters. Our helicopter was delivered to the police department and it was always a police helicopter. It never touched the civil space. It was a public sector aircraft not used for any kind of weekend enthusiast flight, not used as a civilian aircraft or taking anybody on tours in Hawaii or anything like that. So this particular helicopter, in fact, was the same helicopter in the Jones case, which was used by the military, obviously modified for their purposes. But I want to point out something important about Jones, which is that the military put in their contract with the manufacturers that they wanted a certification as this voluntary additional thing. And what the Second Circuit said in Jones was even that is not going to change the nature of a public aircraft into a civil aircraft, even though the military itself is requesting that voluntarily. It still stays in its lane as a public aircraft. I wanted to talk also about this court's recent decision in the Makalief case. I think I'm pronouncing that right. 173 F-4th at 1034. And like Kennedy, it focused on the plain language of the statute. But it also said when GAR's text is clear, its legislative history confirms our reading of the statute if such confirmation is needed. So looking at how all of this will fit together in one unit that makes sense, if you take the ordinary meaning of general aviation, which they were saying that Congress wasn't trading on that common meaning. But the truth is, is that the way that GAR was invented was that Congress created a committee of aviation's best and brightest to try to help the industry. And they invented GAR in their report, which is a report that was referenced by President Bill Clinton while signing GAR into law. And in that report, they used the industry term of general aviation to describe how they wanted to have GAR apply. And so they did indeed trade on that in that. And I think that the court's language in Kennedy is extremely strong in what it shows about what the court was saying. It said because the helicopter began its service as a military aircraft, it was not at that time a general aviation aircraft, but rather a public aircraft, which is defined to include aircraft used only for the United States government. As such, the helicopter was not required to have either a type certificate or an error within a certificate, and it cannot be considered a general aviation aircraft at that time. Now, if you read Kennedy, you can see how it wasn't necessary for the court to talk about public aircraft to reach the result that it did. It could have just said it was delivered as an aircraft, and later it was a general aviation aircraft, and that's the end of it. No need to reference 401.02 or mention public aircraft at all in that case. But the court did. And I think that's very significant, and that's relevant, and it shows how the precedent and the common meaning of GARA, and when you look at it within how it fits into Title 49 as a whole, and then in order to confirm all of that legislative history and what that shows, it all just gels into one thing. But if you want to follow their interpretation of GARA, you have to look at it in a silo. You have to look at it in a vacuum. As my friend pointed out, this wasn't — once a bill is enacted into law, it's not just a standalone thing that exists. It becomes a part of the U.S. Code, and you have to read it within — how it fits within that, and read it within Title 49, Part A, which is titled Air Commerce and Safety, focused on civil aircraft. Great. Thank you. Thank you. Thank you both for the excellent advocacy. Case is submitted.
judges: LEE, BUMATAY, SUNG